UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| LISA LAMB,<br><br>                        Plaintiff,<br>v.<br><br>ROCKWELL AUTOMATION INC.,<br><br>                        Defendant. | Case No. 15-CV-1415-JPS<br><br><br><br>ORDER |

1.     INTRODUCTION

On December 28, 2015, Defendant Rockwell Automation Inc. ("Rockwell") filed a partial motion to dismiss Plaintiff Lisa Lamb's ("Lamb") complaint along with a brief in support of the motion. (Motion, Docket #7; Brief in Support, Docket #8). Lamb filed a brief in opposition on January 18, 2016, as well as a declaration of counsel with exhibits attached. (Brief in Opposition, Docket #9; Declaration of Alan Olson, Docket #10; Exhibits A, B and C to Olson Declaration, Docket #11, #12, and #13, respectively). Rockwell submitted a reply in support of its motion on February 1, 2016. (Docket #14). The motion is fully briefed and, for the reasons explained below, it will be granted.

2.     STANDARD OF REVIEW

Rockwell has moved to dismiss Lamb's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). This rule provides for dismissal of complaints which fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a viable claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the…claim is and the grounds upon which it rests." *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (citation omitted).

In reviewing Lamb's complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Id.* at 480-81. However, a complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). The Court must identify allegations "that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.

3. THE AMENDED COMPLAINT

Accepting the truth of Lamb's well-pleaded allegations and drawing all reasonable inferences in her favor, the relevant facts are as follows. Lamb asserts two claims against Rockwell. First, Lamb claims that she was subject to "whistleblower retaliation" in violation of Section 806 of the Sarbanes-Oxley Act of 2002 ("SOX"). (Docket #1 at ¶¶ 131-32); *see* 18 U.S.C. § 1514A. Second, Lamb asserts another "whistleblower retaliation" cause of action, this time pursuant to the Dodd-Frank Wall Street and Consumer Protection Act of 2010 ("DFA"). (Docket #1 at ¶¶ 133-34); *see* 15 U.S.C. § 78u-6.

Lamb worked for Rockwell for almost 25 years. (Docket #1 at ¶ 7). For most of that time, she was a Database Administrator in Information Technology. *Id.* at ¶ 8. From January 2012 to her termination, Lamb was the IT Risk and Controls Lead. *Id.* at ¶ 9. In that position, Lamb reported to Sharon Clement ("Clement"), Manager of IT Controls, who herself reported to Mary Ward ("Ward"), Manager of Compliance. *Id.* at ¶¶ 9-10.

Lamb's department monitored access to Rockwell's data related to SOX-reporting requirements. *Id.* at ¶ 12. The system it used to do so, the "GRC tool," kept track of user access to the data that may be beyond that user's needs. *Id.* at ¶¶ 11-26. Such monitoring is necessary both for SOX compliance and to mitigate business risk. *Id.* at ¶ 27.

Soon after Lamb became the IT Risk and Controls Lead, conflicts began between herself and Clement. *Id.* at ¶¶ 31-37. On June 28, 2012, Clement ordered Lamb to disable certain aspects of the GRC tool, which would make it difficult or impossible to monitor data access. *Id.* at ¶¶ 38, 40-45. Lamb believed that doing so was dangerous for Rockwell, against industry best practices, and violative of SOX regulation. *Id.* at ¶¶ 38-46, 54-55. The change was made, but Clement did not appreciate Lamb's objection to the change, and Ward defended Clement's position. *Id.* at ¶¶ 47-49.

Clement then began retaliating against Lamb for her resistance, including spreading gossip about her and refusing to meet or speak with Lamb. *Id.* at ¶¶ 58-65. Ward eventually assisted in the retaliatory activity, which had escalated to giving Lamb unworkable projects and a "performance improvement plan" which was essentially a criticism of her work. *Id.* at ¶¶ 67-74.

On April 7, 2013, Lamb complained to Rockwell's legal counsel about the retaliatory activity. *Id.* at ¶ 78. Lamb criticized Clement's GRC tool change and stated that it allowed Clement to present falsified reports to management to protect her job. *Id.* at ¶¶ 79-92. Rockwell's counsel never responded to Lamb's April 7, 2013 complaint. *Id.* at ¶ 94.

On April 17, 2013, Lamb received a request for access to Rockwell's computer system from a contractor hired by Rockwell, Balaji K. Jilla ("Jilla"). *Id.* at ¶¶ 96-97. Lamb passed on the request for approval by Ward or

Clement, as she was required to do, but it was inexplicably delayed. *Id.* at ¶¶ 99-104. Lamb eventually agreed to share her password to the "sandbox" side of the system to allow Jilla to begin working.[1] *Id.* at ¶ 105. She informed Clement of this soon afterward. *Id.* at ¶ 106.

Clement accused Lamb of violating Rockwell's password policy by sharing her "sandbox" password with Jilla and suspended Lamb. *Id.* at ¶¶ 108-9. Clement then told the human resources department about the issue, but neither she nor anyone in that department properly considered the limited scope of the "sandbox" system and its passwords. *Id.* at ¶¶ 110-124, 127. Clement recommended that Lamb be terminated, which occurred on April 30, 2013. *Id.* at ¶¶ 126, 128. Lamb contends the Jilla password issue was contrived so that Clement could continue her retaliation and get Lamb fired. *Id.* at ¶¶ 109, 126, 128.

On June 13, 2013, Lamb (through counsel) filed a complaint with the SEC pursuant to the DFA, alleging that she was fired for engaging in protected activity. (Docket #11).[2] On August 16, 2013, Lamb's counsel submitted another SEC complaint, this time on a SEC form, concerning the same subject matter. (Docket #12). On August 19, 2013, the SEC confirmed

---

[1]The "sandbox" includes fake users and production data as a testing environment, and changes there would not affect the rest of the system. (Docket #1 at ¶¶ 113, 115).

[2]Lamb includes no allegations regarding her SEC filings in her complaint, but instead submitted the filings as part of her response to the motion to dismiss. *See* (Docket #10, #11, #12, and #13). While this might ordinarily convert the motion to one for summary judgment and entitle Rockwell to obtain pertinent evidence, Fed. R. Civ. P. 12(d), Rockwell has not objected to the evidence. (Docket #14 at 2). The Court will therefore accept the filings and consider them in its instant ruling. In any event, the evidence does not help Lamb.

receipt of the form, but has not yet rendered a decision on Lamb's complaint. (Docket #13 and #10 at ¶ 5).

4.   ANALYSIS

Rockwell moves to dismiss only Lamb's DFA claim. (Docket #7). Rockwell notes that it is not entirely clear under which sections of the DFA Lamb asserts her claim. Section 1057 prohibits retaliation against an employee who objects to what they believe is unlawful conduct. 12 U.S.C. § 5567(a)(4). This only applies to businesses and employees who deal in consumer financial products or services. 12 U.S.C. §§ 5481(5)-(6) and 5567(b). Rockwell argues that Lamb failed to allege the *prima facie* elements of a Section 1057 claim, and Lamb makes no attempt to oppose the argument. (Docket #8 at 3-6; *see generally* Docket #9). As such, to the extent Lamb asserts a Section 1057 claim, it must be dismissed. *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016).

The focus of the parties' briefing is instead on Lamb's Section 922 claim.[3] Section 922 encourages individuals to report violations of securities laws to the Securities and Exchange Commission ("SEC" or "Commission"). *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 623 (5th Cir. 2013). This section prohibits retaliation against a "whistleblower" because that person:

> (i) [provided] information to the Commission in accordance with this section;
>
> (ii) [initiated, testified, or assisted] in any investigation or judicial or administrative action of the Commission based upon or related to such information; or

---

[3]Section 922 is a reference to the original bill. It is codified as 15 U.S.C. § 78u-6. The Court will still identify Section 922 as the basis for the claim for brevity's sake.

> (iii) [made] disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this chapter, including section 78j-1(m) of this title, section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

15 U.S.C. § 78u-6(h)(1)(A) (part (iii) of this subsection hereinafter "Part (iii)"). A "whistleblower" is a person providing "information relating to a violation of the securities laws to the Commission[.]" *Id.* at (a)(6).

Congress delegated authority to administer the DFA to the SEC. The SEC has promulgated a final rule relating to Section 922, asserting that Part (iii) "includes individuals who report to persons or governmental authorities other than the Commission," and, as relevant to this case, persons who are protected by the SOX anti-retaliation provisions. 17 C.F.R. § 240.21F-2(b) (2011); 76 Fed. Reg. 34300-01 at 34304, 2011 WL 2293084 (2011). Lamb's claim to DFA protection is based on this SEC rule, as it rests on her making SOX-protected disclosures.

The interplay between the terms of Section 922 and the SEC final rule and commentary has created a circuit split. The Second Circuit and various district courts in the First, Second, Third, Sixth, Eighth, Ninth, and Tenth Circuits find that Section 922 is ambiguous. *Berman v. Neo@Ogilvy LLC*, 801 F.3d 145, 147-48 (2nd Cir. 2015); *see Verble v. Morgan Stanley Smith Barney, LLC*, 148 F.Supp.3d 644, 652 (E.D. Tenn. 2015) (collecting cases). They find that "arguable tension" exists between the definition of "whistleblower" and Part (iii), because one of Part (iii)'s specific cross-references, the SOX, protects persons who report unlawful activity internally without reporting to the SEC. *Berman*, 801 F.3d at 147-48, 153-54. Because of this ambiguity, they defer to the SEC's final rule and commentary, which resolves the issue by expressly including, *inter alia*, SOX-protected internal reporters. *Id.* at 155.

The Fifth Circuit disagrees. *Asadi*, 720 F.3d at 625-630. It finds that "there is only one category of whistleblowers: individuals who provide information relating to a securities law violation to the SEC. *Id.* at 625. Subsection 78u-6(h)(1)(A) specifically provides that only "whistleblowers" are protected by the section. *Id.* Part (iii), along with other parts of Subsection 78u-6(h)(1)(A), merely describes the type of conduct which is protected, which includes internal reporting pursuant to the SOX, not type of persons protected. *Id.* at 626. Thus, a person must report activity to the SEC to be protected by Section 922. *Id.* at 629. District courts in this Circuit and in the Second, Ninth, and Tenth conclude the same. *Verble*, 148 F.Supp.3f at 652 (collecting cases).

Neither the Court nor the parties have located controlling Seventh Circuit precedent on this issue. Without such direction, the Court finds the *Asadi* position more persuasive. Like Judge Griesbach in *Verfueth*, the Court finds no ambiguity in Section 922 which would permit deference to the SEC's broad interpretation of Part (iii). *Verfueth v. Orion Energy Systems, Inc.*, 65 F.Supp.3d 640, 644-46 (E.D. Wis. 2014). Section 922 constrains its protection to those who meet the definition of "whistleblower." To allow the SEC's rule to hold otherwise would read that definition out of Section 922 and read the term itself out of Subsection 78u-6(h)(1)(A). *Asadi*, 720 F.3d at 628; *Verfueth*, 65 F.Supp.3d at 645. Further, Congress' approach is simple enough: a certain category of people, whistleblowers, may seek the protection of Section 922 if their activity falls within one of Subsection 78u-6(h)(1)(A)'s three parts. This is in contrast to the SOX, which extends its protection to all "employees" of a reporting company. 18 U.S.C. § 1514A(a); *Berman*, 801 F.3d at 157-58 (Jacobs, C.J., dissenting). As observed by Judge Jacobs in her dissent from *Berman*,

> [t]he majority and the [SEC] altered a federal statute by deleting three words ("to the Commission") from the definition of "whistleblower" in the Dodd–Frank Act. No doubt, my colleagues in the majority, assisted by the SEC or not, could improve many federal statutes by tightening them or loosening them, or recasting or rewriting them. I could try my hand at it. But our obligation is to apply congressional statutes as written.

*Berman*, 801 F.3d at 155 (Jacobs, C.J., dissenting). The Court need not explore the policy implications of Section 922's plain language or its legislative history, as vociferously argued by each camp, *see id.* at 150-55, 158-59; (Docket #9 at 4-10; #14 at 4-11), because the statute's command is clear.

In light of the Court's position, Lamb's Section 922 claim must fail. It is true that she filed a complaint with the SEC on June 13, 2013. (Docket #9 at 2). However, the complaint came long after her internal reporting activity and her eventual termination in April 2013. Lamb contends that filing a SEC complaint is a condition precedent to filing her instant action, and she has done so; in fact, her SEC complaint remains pending. *Id.* Lamb misunderstands the SEC complaint requirement. It is not a condition precedent to filing a Section 922 lawsuit, but rather an element of the *prima facie* case. Rockwell is only prohibited from retaliating against a "whistleblower"—one who has reported to the SEC—and at the time it allegedly retaliated, Lamb was not one. Thus, not only does Lamb fail to state a Section 922 claim, she can never do so.

5.  CONCLUSION

To the extent Lamb asserts a Section 1057 claim, it must be dismissed because she failed to come to its defense. Her Section 922 claim must also be dismissed because she is not a "whistleblower" entitled to its protections. Rockwell's motion will, therefore, be granted.

Accordingly,

IT IS ORDERED that the defendant's partial motion to dismiss (Docket #7) be and the same is hereby GRANTED; and

IT IS FURTHER ORDERED that the plaintiff's cause of action pursuant to the Dodd-Frank Wall Street and Consumer Protection Act of 2010 (Docket #1 at ¶¶ 133-34) be and the same is hereby DISMISSED with prejudice.

Dated at Milwaukee, Wisconsin, this 12th day of August, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

Page 9 of 9
Case 2:15-cv-01415-JPS   Filed 08/12/16   Page 9 of 9   Document 15